UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------- X

MARTHA COLE and WAYNE
HONSBERGER, individually and on behalf
of themselves and all other similarly
situated,

Plaintiffs,

v.

BEHR PROCESS CORP.; BEHR PAINT
CORP.; MASCO CORP.; THE HOME
DEPOT, INC.; and HOME DEPOT U.S.A.,
INC.,

Defendants

-------------------------------------------------- X

Case No. 17-cv-5052

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Martha Cole and Wayne Honsberger, individually and on behalf of all others

similarly situated, by and through undersigned counsel, alleges as follows:

## NATURE OF CASE

1.      Millions of Americans have wooden decks and concrete surfaces outside their

homes. The surfaces require periodic maintenance not only to maximize their useful life, but also

to keep up their appearance. Traditionally, homeowners apply paints or stains on their decks and

patios to provide a decorative and protective barrier from the elements and to minimize wear and

tear.

2.      In 2013, Behr, through a national marketing campaign, released a new patio and

deck product exclusively through Home Depot, branded as DeckOver. Behr and Home Depot

represented to homeowners that DeckOver was worth its premium price (3-5 times more expensive

1

than ordinary paints and stains) because it was a more durable coating (5 times thicker), and it could repair decks by filling in cracks and stopping splinters.

3.      But DeckOver is not durable or long-lasting. Instead, within mere months of application, DeckOver begins to flake, peel, and separate from deck and concrete surfaces. Thus, rather than providing homeowners with a premium option for reducing maintenance work and improving the look and performance of their patios and decks, DeckOver performs worse than cheaper options and requires hours of scraping, scrubbing, and sanding to remove it (with some homeowners resorting to replacing their decks entirely).

4.      Plaintiffs bring this class action suit on their own behalf and on behalf of others similarly situated under New York consumer protection laws. Plaintiffs seek an order forcing Behr and Home Depot to stop their deceptive conduct and provide appropriate remuneration to affected consumers.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the proposed class are citizens of states different from that of Behr Process Corporation and Behr Paint Corporation.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of property that is the subject of the action is situated in this District.

## PARTIES

7.      Plaintiff Martha Cole is a resident of Suffolk County, New York and citizen of the State of New York.

8.      Plaintiff Wayne Honsberger is a resident of Monroe County, New York and citizen of the State of New York.

9.      Defendants Behr Process Corporation and Behr Paint Corporation are California corporations, with their principal place of business in California. Both Behr Process Corporation and Behr Paint Corporation are located at 3400 W. Segerstrom Ave., Santa Ana, California 92704.

10.      Defendant Masco Corporation is a Delaware corporation, with its principal place of business in Michigan. Masco is located at 20001 Van Born Road, Taylor, Michigan, 48180. Masco acquired Behr Process Corporation in 1999. Masco conducts Behr-oriented marketing and sales operations in Santa Ana, California. Plaintiffs refers to Behr Process Corporation, Behr Paint Corporation, and Masco Corporation collectively as "Behr."

11.      Defendant The Home Depot, Inc. is a Delaware corporation, with its principal place of business in Georgia. The Home Depot, Inc. is the parent company of Home Depot U.S.A., Inc. and describes itself in annual reports filed with the Securities Exchange Commission as the world's largest home improvement retailer.

12.      Defendant Home Depot U.S.A., Inc. is a Delaware corporation, with its principal place of business in Georgia. Home Depot U.S.A. operates as a subsidiary of The Home Depot, Inc.

## COMMON FACTUAL ALLEGATIONS

### I.     Deck and Patio Restoration

13.      Wooden decks and concrete surfaces are prone to wear and deterioration through exposure to the elements, which leads to scuffing, decay, cracking, and splinters. Periodic maintenance is needed to maximize the surfaces' useful life and to keep up their appearance.

14.    One way to maintain the surfaces is through application of coatings. Coatings include paints and stains that provide a thin decorative and protective barrier (with the stains actually soaking into the fibers themselves). Although paints and stains provide some surface protection, they typically do not improve the surfaces' condition (for example, by fixing cracks or splinters). Paints also need to be reapplied relatively often to maintain their cosmetic and protective benefits.

15.    An alternative coating, which is the focus of this case, is a relatively recent introduction to the marketplace: a protective, restorative coating, known as a resurfacer. Resurfacers are also painted onto surfaces and are typically marketed as providing substantially more benefits (at a greater cost) than paints and stains. Resurfacers are supposed to provide an attractive appearance akin to what a paint or stain would provide, but better preserve the surface by coating it in a significantly thicker protective barrier. The thicker coating provides the added benefit of filling in large cracks and encapsulating splinters. Resurfacers are designed and expected to last significantly longer than paints and stains, eliminating the need for regular maintenance while at the same time substantially extending the life of wood and concrete surfaces.

16.    Because of their expected added benefits, resurfacers typically cost substantially more than paints and stains. A consumer who spends the extra money to buy a resurfacer may be able to avoid replacing a deck or will have to devote less time and money to maintaining the deck in the years that follow.

## II.    Behr DeckOver

17.    Behr manufactures a line of deck resurfacers: "Behr's Premium DeckOver." Behr officially introduced its Premium DeckOver product in the spring of 2013, claiming in a press

release that DeckOver was an "advanced formula" that "revitalize[s] tired decks, patios, porches and even pool decks, and provides a budget-friendly unique solution that was previously unavailable to consumers." According to Scott Richards, Senior Vice President of Marketing at Behr Process Corporation, this product line was the culmination of "years of research and the latest technology."

18.     Richards described "easy application and durable protection against the elements, . . . allowing consumers to rejuvenate instead of replacing their decks or concrete surfaces." About a year later, Behr introduced a Textured DeckOver product. DeckOver is sold exclusively at Home Depot, both online and at retail locations.

### III.    Defendants' Misleading Marketing Campaign

19.     Since DeckOver was introduced, both Behr and Home Depot have marketed it as a durable and long-lasting alternative to paint and stains, capable of extending the life of surfaces.

20.     For example, Behr's website claims DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." It also describes DeckOver as "5x thicker than standard paints and stains."

21.     Similar representations appear on the product's packaging:



The label states that DeckOver "Brings new life to old wood & concrete"; "Covers up to 75 Sq. Ft. in 2 Coats"; "Creates a Smooth, Slip-Resistant Finish"; and Conceals Splinters & Cracks up to ¼"."



The label also represents:
• "Resists Cracking & Peeling";
• "Durable, Mildew Resistant Finish";
• "Waterproofing, Solid Color Coating";
• "Revives Wood & Composite Decks, Railings, Porches & Boat Docks";
• Great for Concrete Pool Decks, Patios & Sidewalks"; and
• "Interior/Exterior, 100% Acrylic Formula."

22.     Behr also airs television commercials advertising DeckOver that corroborate its

misleading statements on the product labels. The DeckOver television commercials emphasize the

same themes as can be found on DeckOver labeling and in-store displays: the ads feature people

standing and dancing barefoot on decks, with a voiceover saying not to "let cracks and splinters

spoil your fun" and promising DeckOver is "made-to-last," "extends the life of your deck," and is the "ultimate do-over for wood and concrete."

23.     Behr hosts a blog entitled "Colorfully Behr" at www.behr.com/colorfullybehr. A blog entry dated May 31, 2013, markets DeckOver: "excellent news if you have a wood deck that looks old and weathered, or a pool deck that's cracked and ugly, because you don't have to replace it anymore." In the comments portion on this DeckOver entry, Behr describes the "life expectancy" of DeckOver as "similar to a high quality solid color wood stain (typically 5-10 years on horizontal surfaces, 15-25 years on vertical surfaces)." Behr also states on Home Depot's website that DeckOver "can be expected to last as long as a high quality Solid Color Wood Stain," which is "5-10 years on horizontal surfaces and 15-25 years on vertical surfaces."

24.     Home Depot markets DeckOver in a virtually identical manner as Behr. On its website, Home Depot emphasizes the durability and restorative effects of DeckOver, claiming it "will bring your old, weathered wood or concrete back to life," that it will "create[] a durable coating on your tired deck, rejuvenating its look," and that it will "[b]ring new life to old, uninviting wood" and make your surfaces "like new," with a "refreshed look." Home Depot, like Behr, emphasizes that DeckOver "[r]esists cracking and peeling," "conceals splinters and cracks up to ¼ in," and is "waterproof[]," providing a "mildew resistant finish." In-store displays at Home Depot tout DeckOver's "long-lasting durability."

25.     The misleading representations were present at every point of purchase and were integrated through a message campaign to consistently convey the deceptive and misleading message that DeckOver has superior durability.

26.     Behr and Home Depot use these representations to charge more for DeckOver. Behr's overall marketing scheme focuses on DeckOver's superior durability compared to paints

and stains and that it is an alternative to deck replacement (which is several times more expensive). DeckOver, compared to Behr and other companies' paints and stains, covers 3-5 times less area and yet is more expensive per gallon.

| Type | Behr Product | Coverage per gallon | Cost per gallon |
|---|---|---|---|
| Resurfacer | DeckOver | "75 sq. ft. in two coats" | $35 |
| Stain | DeckPlus Waterproofing Wood Stain | 250-300 sq. ft. first coat 500-600 sq. ft. second coat | $27 |
| Paint | Porch & Patio Floor Paint | 400 sq. ft. | $28 |

## IV. DeckOver Is Not a Durable Alternative to Paints, Stains, and Other Resurfacers

27.    DeckOver is not capable of reliably coating wood and concrete surfaces for more than a short period of time. It routinely peels, bubbles, and degrades within months of application.

28.    Behr's website has received significant consumer complaints since summer 2013 concerning DeckOver's short-lived utility, the damage it causes to the surfaces to which it is applied, and the time and money spent to either rehabilitate or replace decks to which DeckOver was applied. Several examples of these complaints are excerpted below:

- "I was extremely happy to hear the supposed benefits and ease of use of this new product. … The problem is that upon putting our furniture back on the deck, any slight movement scratches the finish back down to the bare wood. We hosted a party this weekend for 30 people and I now have 10 or so areas to touch up. With the cost and time spent dealing with this product, I expect years of normal wear and tear, not one week. We are disappointed and would recommend going a different route."—June 29, 2013

- "When it dried the deck looked like plastic rather than wood. And then when we placed the outdoor furniture back on the deck we found that the slightest movement of the chairs mars the deck finish. When the dog runs across the deck her wet/muddy paws mark the deck. The Deck Over finish is too delicate for a deck. We are very disappointed with the product, with Behr and with Home Depot."—August 8, 2013

- "Don't waste your money on this product if you have an older deck with cracks. The coverage is not want [*sic*] the product advertised and the paint chips and scratches very easily. The product is way over priced. You would come out a lot better just to replace the decking boards."—September 9, 2013

- "Worst product ever! Waste of money! . . . I bought the Behr Deckover product in order to redo my deck. I did all the prep work the instructions stated to do . . . I did all of this in the summer of 2013. It is now February 2014. The product did not even last one year.the product is already peeling up off of the wood . . . I would have been better to re stain the deck rather than use this product. I will have to now re-sand all of this off and apply a coat of deck stain to protect the wood."—February 27, 2014

- "Peeling off after 8 months . . . I painted my deck in summer 2013, followed all instructions from the can. Just after 8 months my deck started to peel off. Now I have to spend money getting all my deck sanded to be able to get all this deck over removed.—March 10, 2014

- "Peeled Badly . . . When I applied the Deck Over product, last summer, it looked beautiful. But now that winter has ended it's peeling and looks horrible. I've only had it down for 9 months and now I'm going to have to completely redo my deck. What an absolute mess!"—April 18, 2015

- "Peeling . . . Did not last one year and very difficult to work with. You need to offer total refunds at the very least. There is no way to return the time spent working with this garbage and no way to put a price on the stress caused when the peeling began after the snow melted."—May 10, 2015

- "I was so excited to try Deckover on my deck. The pictures made it look like an amazing product. I prepped and sanded the deck using Behr products as I wanted to make sure I applied everything

10

correctly. After the snow melted this year over 50% of my deckover peeled right off. I am sad to say that splurging for the more expensive 'better' product certainly did not pay off for me. Product states it will last on a deck for up to 10 years yet it hasn't even lasted a full year on my deck. I am very disappointed in Behr and their deckover product"—May 12, 2015

- In less than a year of putting this Deck over on our deck, I started to see some bubbling starting along the trim boards of the deck. Not much longer and the whole deck showed signs of the bubbling and then complete peeling . . . This was intended as a hot tub deck but now it sits empty as we cannot afford to buy any other stain/paint. Plus take the time to peel all the defective Behr Deck over paint and put another cleaner on the deck."—October 27, 2016

- "Followed all the instructions . . . Started peeling after about 60 days to a point where large chunks were blowing off. Now comes the hard part of using sandpaper, sanding discs, chemicals, power washer, scrapers and anything else I can think of to remove what's left. Behr owes me 48 hours of my life back. Thank goodness I didn't do the railings and spindles!!!!!"—April 3, 2017

- "This is the worst product I have ever purchased. Advertised to bring back old wood to life, it ruined what old wood I had and caused me to replace my entire deck! Would NEVER recommend this product to anyone."—May 9, 2017

29.       Home Depot has also received hundreds of DeckOver complaints through its website:

- "Doing my deck over . . . Don't buy this product. I hope it holds up during the winter. Otherwise I'll be doing my deck over in the spring. It definitely will not be Behr's DeckOver or anything by Behr for that matter."—August 3, 2013

- "Peeling after 6 mos . . . I followed all of the directions & replaced all rotted deck boards. Deck over is peeling & bubbling all over my deck! A disaster"—May 14, 2014

- "Did not last a year . . . Labor intensive to install. did not hold up over northern Illinois winter. i would pass."—May 24, 2014

- "the worst stuff on the market, didn't last 3months and when I want my money back this paint is GARBAGE."—July 3, 2014

- "We used this product on an older deck, after buying our home. Spent tons of money and time on this project with Deck Over last fall, in September. It's only May, and the whole area is peeling off. Needs totally redone again, and it hasn't even been a year."—May 14, 2014

- "Worst product I have ever bought. We used over 6 gallons for our large deck. The sales person told us it would last 10 year. We followed the instructions exactly and within SIX months it was peeling! Not to mention it does not fill in cracks like promised."—June 3, 2015

- "We feel the product was misrepresented by Home Depot and Behr and therefore did not meet our expectations. It did not do a good job of covering the concrete surface of our lanai."—March 5, 2017

- "I should've read the reviews before using this product. We actually paid a professional to apply it to our deck. They followed all of the instructions and it looked great for about a month and then we had a few late spring snow storms not it is peeling right off the wood. It is starting to look terrible. What a waste of money!"—May 17, 2017

- "This paint is terrible!!! Did every step Bahr [sic] called for last summer 2016 to prep deck and paint with deck over. It is now April or 2017 and my deck is peeling badly. You can take the paint and peel it up like tape. Absolutely horrible. Spent 500.000 (sic) dollars and one week to paint deck and railings."—April 9, 2017.

- Within 7 months this product will peal (sic) up. I have no idea why this product is still on the market. You will be scraping it off in a year. Don't waste your time or money on it."—June 6, 2016

- "Mine is bubbling up after ONE month. Applied exactly as specified. Horrible product."—October 1, 2016

- "HORRIBLE PRODUCT. I would never recommend this!!!!! . . . We spent so much money and time using a product that turned out to be an utter disaster. Home depot should have tested this product thoroughly . . . very laborious, not long lasting, deck looks worse since using product, does not hold up to normal weather conditions, high price for sub-par product."—May 1, 2014

- "This product is just awful, less than a year after application and my deck is peeling and the flakes of paint are literally covering my lawn and being tracked into the house. We followed all the manufacturer instructions on preparing the wood for this product but all that money and time we spent using this product was a waste. The worst part is now I have to try to fix it. Please, please save yourself and do not try this product!"—May 17, 2016

- "We purchased 3 cans and all the supplies needed. Followed the instructions to a tea. Looked great for a very short few months and peeled and chipped and now looks worse than it did before all my time, work, and money!! So. Mad!!"—May 15, 2015

- "after 6 months this is peeling . . . We are seniors that live on SS and bought this product for our deck. It was very expensive, but it was highly recommended and we used it as the directions recommended. We had a lot of snow and cold weather this year, but we thought this was the purpose of this product. We would never recommend this product."—March 20, 2015

30.    In May 2016, CBC News published an article entitled: "Behr Deckover subject of customer complaints over peeling paint; Company removed Facebook page with numerous complaints after CBC inquiry." The article describes, among others, homeowner Paul Rhyno, who first used DeckOver in 2014. But "[w]ithin about three months after [Mr. Rhyno] put it on, it started peeling off in big swaths and bubbling." He tried again the following year but got the same results. The article contains photographs of Mr. Rhyno's damaged deck:





31.    Negative consumer reactions to Behr's DeckOver can also be found elsewhere across the internet. For example, about 100 customers have written complaints about DeckOver on pissedcustomer.com, including the following:

- "I applied deckover last fall and now it is all peeling off and my deck looks worse than when I first did it. I am very disappointed in this product. I spent well over a hundred dollars on this product . . . I thought it was guaranteed to last up to 10 years."—May 15, 2015

- "I spent a great deal of money painting two decks with this garbage. One year later it is peeling off everywhere . . . I now am having to replace several rotted boards, pay for pressure washing

14

again and when cured, repainted. It will obviously cost me more to
fix the problem than when I initially paid to have the deck painted,
as I am sure a lot of scraping will also have to be done."—October
19, 2016

- "I had this product put on my deck last fall and it began to peel by
  spring. Now I have multiple places that the deck over has
  completely peeled off . . . It's a shame you pay hat [sic] much for a
  product that does not last one year."—December 30, 2016.

32.      Behr also researched and tested DeckOver before beginning to sell it. Given how

quickly it becomes apparent that DeckOver is not capable of performing as a durable alternative

coating on wood and concrete surfaces, Behr certainly discovered that DeckOver begins to peel,

chip, bubble, and crack within months of application before introducing DeckOver to the market.

33.      After it went on the market, complaints were widespread and persistent: Defendants

have received phone calls and emails complaining about DeckOver, and consumers have been

uploading negative reviews of DeckOver on Behr's own website, Home Depot's own website, and

elsewhere since summer 2013. Fixing the damage to one's deck that results from applying

DeckOver is difficult and costly. As the reviews above describe, DeckOver cracks, peels, bubbles,

and chips, exposing the underlying surface to the elements. All these forms of exposure both fail

to protect wood from precipitation and trap water onto wooden boards underneath the DeckOver

that remains, causing mildew and rot. Repairing loose areas in patches does not solve these

problems as other areas of DeckOver will inevitably loosen. Full removal of DeckOver requires

stripping the deck and reapplying a protective coating, which takes hours. Given how costly it is

to remove DeckOver, re-prepare the surface, and re-coat it, some deck owners resort to replacing

their decks entirely.

34.      Yet Defendants continue to sell DeckOver, continue to market it as "durable,"

"long-lasting," and an alternative to replacing one's deck and do not warn customers beforehand

that the product fails after only a few months, often leaving the surface looking worse than before DeckOver was applied.

35.    As a result, consumers continue to spend hundreds of dollars purchasing and applying DeckOver and spend time and money removing and replacing DeckOver when it peels, bubbles, chips, cracks, discolors, and damages their decks.

## PLAINTIFFS' EXPERIENCES:

36.    In Summer of 2015, Plaintiff Wayne Honsberger purchased two 5-gallon containers of Behr DeckOver paint product from a Home Depot store in Rochester, NY. Pre-purchase, Mr. Honsberger spoke with a Home Depot sales representative and viewed an in-store advertisement. While reviewing the DeckOver, Mr. Honsberger chose DeckOver, in part, because it did not require sanding.

37.    Mr. Honsberger applied the DeckOver to his deck, including a deck and railings, in Summer of 2015. He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed. Within two years, the DeckOver began to bubble and pull off the wood surfaces, and cracks appeared in the coating. Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

38.    Had Mr. Honsberger known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

39.    Mr. Honsberger continues to own a home with wooden surfaces outside and reasonably intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings. He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable

finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

40.      In August of 2013, Plaintiff Martha Cole purchased several 5-gallon containers of Behr DeckOver paint product from a Home Depot store in Patchogue, NY. Pre-purchase, Ms. Cole spoke with a Home Depot sales representative and viewed an in-store advertisement. While reviewing the DeckOver, Ms. Cole paid particular attention to Behr's marketing that DeckOver did not require sanding.

41.      Ms. Cole applied the DeckOver to her deck, including a deck and railings, in August of 2013. She carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed. Within two years, the DeckOver began to bubble and pull off the wood surfaces, and cracks appeared in the coating. Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

42.      Had Ms. Cole known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

43.      Ms. Cole continues to own a home with wooden surfaces outside and reasonably intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings. She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## CLASS ACTION ALLEGATIONS

44.      This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

45.     Plaintiffs seeks to represent the following New York Class:

New York Class: All persons who purchased a Behr Premium DeckOver product in the state of New York.

46.     Excluded from the class are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased DeckOver for resale.

47.     Plaintiffs and class members seek relief under Rule 23(b)(2). The injunctive relief Plaintiffs and class members seek is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation. Plaintiffs and class members also seek relief under Rule (b)(3) and/or (c)(4).

48.     **Numerosity**: Behr has manufactured, and Home Depot has sold, DeckOver to at least thousands of proposed class members. Members of the proposed classes are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

49.     **Commonality and Predominance**: Common question of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members. These common questions include whether:

a.      Defendants marketed DeckOver as a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces;

b.      DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to

> promptly peeling, chipping, bubbling, and degrading within months of application;

c.    Defendants' marketing of DeckOver was false, deceptive, and misleading to reasonable consumers;

d.    Defendants knew DeckOver was not a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces and is instead susceptible to peeling, chipping, bubbling, and degrading within months of application;

e.    DeckOver's propensity to peel, chip, bubble, and generally degrade within months of application, rather than provide long-lasting protection for wood and concrete surfaces, would be important to a reasonable consumer;

f.    Defendants failed to disclose DeckOver's propensity for peeling, chipping, bubbling, and degrading within months of application; and

g.    Whether Defendants' conduct violates various state consumer protection statutes.

50.    **Typicality**: Plaintiffs' claims are typical of the claims of the proposed classes. Plaintiffs and the members of the proposed classes all purchased DeckOver, giving rise to substantially the same claims.

51.    **Adequacy**: Plaintiffs are an adequate representation of the proposed classes because their interests do not conflict with the interests of the members of the classes that they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

52.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

53.    In the alternative, the proposed classes may be certified because:

a.    The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants

b.    The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.    Defendants have acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## **TOLLING OF STATUTES OF LIMITATIONS**

54.     <u>Discovery Rule:</u> Plaintiff's and class members' claims accrued upon discovery that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application. While Defendants knew, and concealed, these facts, Plaintiffs and class members could not and did not discover these facts through reasonable diligent investigation until after they experienced the aftermath of DeckOver application and learned that the problem was not isolated to their DeckOver.

55.     <u>Active Concealment</u> Tolling: Any statutes of limitations are tolled by Defendants' knowing and active concealment of the facts set forth above. Defendants kept Plaintiffs and all class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. Plaintiffs could not have reasonably discovered these facts, nor that Defendants failed to disclose material facts concerning its performance

56.     Estoppel: Defendants were and are under a continuous duty to disclose to Plaintiffs and all class members the true character, quality, and nature of DeckOver. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of DeckOver. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. Plaintiffs reasonably relied on Defendants' active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

57.     Equitable Tolling: Defendants took active steps to conceal and misrepresent material facts relating to DeckOver's performance. The details of Defendants' efforts are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

### Count I

### Violation of N.Y. Gen. Bus. Law § 349

### (On Behalf of the Class Against the Behr and Home Depot Defendants)

58.     Plaintiffs re-alleges the paragraphs above as if fully set forth herein.

59.     Plaintiffs and class members are "persons" within the meaning of N.Y. Gen. Bus. § 349(h).

60.     Each Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. § 349(b).

61.     Home Depot is Behr's exclusive distributor of DeckOver, thereby creating a marketing partnership.

62.     Under the New York Deceptive Acts & Practices Statute, "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful. N.Y. Gen. Bus. § 349.

63.     Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including

representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

64.      Defendants had exclusive knowledge of the fact that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiffs and class members.

65.      Plaintiffs and class members were unaware, and did not have reasonable means of discovering, the material facts that Defendants both misrepresented and failed to disclose.

66.      Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

67.      Defendants' failure to disclose these material facts and their deceptive conduct indicued Plaintiffs and the proposed class members to purchase DeckOver and pay a premium price for it.

68.      These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of DeckOver.

69.      As a direct and proximate result of Defendants' unlawful methods, acts, and practices, Plaintiffs and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

70.      Defendants' acts and practices were willful and knowing.

71.     Plaintiffs and class members are entitled to injunctive relief, recovery of actual damages or fifty dollars per violation (whichever is greater), treble damages up to one thousand dollars, and their reasonable costs and attorneys' fees. *See* N.Y. Gen. Bus. § 349(h).

## Count II

## Violation of N.Y. Gen. Bus. Law § 350

## (On Behalf of the Class Against the Behr and Home Depot Defendants)

72.     Plaintiffs re-alleges the paragraphs above as if fully set forth herein.

73.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning DeckOver . Specifically, Defendants' falsely advertised that DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." Defendants also falsely advertised that Deckover "Resists Cracking & Peeling;" is "Durable, Mildew Resistant Finish"; is suitable for "Waterproofing, Solid Color Coating;" "Revives Wood & Composite Decks, Railings, Porches & Boat Docks;" and is "Great for Concrete Pool Decks, Patios & Sidewalks." Finally, Defendants falsely advertised that Deckover has a life expectancy of 5 to 25 years.

74.     Defendants made these material, untrue, and misleading statements and misrepresentations in their advertising and DeckOver's packaging and labeling. Defendants made these untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

75.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing DeckOver were and continue to be exposed to Defendants' material misrepresentations.

76.     Plaintiffs and the class members were induced to purchased DeckOver by Defendants' advertising, packaging, and labeling.  They have been injured as they relied upon the labeling, packaging, and advertising and paid a premium for the DeckOver , which does not have the characteristics set forth in Defendants' advertising.  Accordingly, Plaintiffs and the class members received less than what they bargained and paid for.

77.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs and the class members are entitled to monetary, compensatory, treble and punitive damages; injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct; and interest, attorneys' fees, and costs.

**Count III**

**Breach of New York Express Warranty**

**N.Y. U.C.C. Law § 2-313**

**(On Behalf of the Class Against the Behr and Home Depot Defendants)**

78.     Plaintiffs re-alleges the paragraphs above as if fully set forth herein.

79.     Plaintiffs and the New York Class members formed a contract with Defendants at the time they purchased the DeckOver. As part of that contract, Defendants represented that DeckOver was "[l]ong-lasting, durable finish," "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion."  Defendants also falsely advertised that DeckOver "Resists Cracking & Peeling;" is "Durable, Mildew Resistant Finish"; is suitable for "Waterproofing, Solid Color Coating;" "Revives Wood & Composite Decks, Railings, Porches & Boat Docks;" is "Great for Concrete Pool Decks, Patios & Sidewalks," and  has a life expectancy of 5 to 25 years. These representations

constitute express warranties and became part of the basis of the bargain between Plaintiffs and the New York Class members, on the one hand, and Defendants, on the other.

80.    Defendants made the above-described representations to induce Plaintiffs and the New York Class members to purchase DeckOver, and Plaintiffs and the New York Class members relied on the representations in purchasing DeckOver.

81.    All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiffs and the other New York Class members.

82.    Defendants breached their express warranties about DeckOver because, as alleged above, DeckOver is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Consequently, Defendants breached New York's warranty laws. N.Y. U.C.C. Law § 2-313.

83.    As a result of Defendants' breaches of express warranties, Plaintiffs and the New York Class members were damaged in the amount of the purchase price or a premium they paid for DeckOver, in an aggregate amount that Plaintiffs will prove at trial.

84.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the New York Class, placed Defendants on notice thereof.

**Count IV**

**Unjust Enrichment**

**Based on New York Common Law**

**(On Behalf of the New York Class Against the Behr Defendants)**

85.    Plaintiffs re-alleges the paragraphs above as if fully set forth herein.

86.    Plaintiffs bring this claim in the alternative.

87.     As described above, the Behr Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

88.     The Behr Defendants' conduct violated, inter alia, state and federal law by manufacturing, advertising, marketing, and selling their Products while misrepresenting and omitting material facts.

89.     As a result of their unlawful and fraudulent acts and omissions related to DeckOver, Plaintiffs and the proposed Class members conferred significant financial benefits and paid substantial compensation for DeckOver, which was not as the Behr Defendants represented it to be.

90.     As a further result of their unlawful and fraudulent acts and omission, the Behr Defendants' knowingly realized obtained substantial revenue from selling DeckOver, at the expense of and to the detriment of Plaintiffs and the proposed Class members and to the Behr Defendants' own benefit and enrichment.

91.     The Behr Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class members, who, without knowledge that the DeckOver would not perform as advertised, paid a higher price for the product than it was worth. The Behr Defendants also received monies for DeckOver that Plaintiffs and the proposed Class members would not have otherwise purchased.

92.     It would be inequitable and unjust for the Behr Defendants to retain these wrongfully obtained profits.

93.     The Behr Defendants' retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

94.    Plaintiffs and the proposed Class are entitled to disgorgement and restitution of the profits unjustly obtained, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter a judgment awarding the following relief:

a.    An order certifying the proposed classes and appointing Plaintiffs' counsel to represent the classes;

b.    An order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law;

c.    An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d.    An order enjoining Defendants from their unlawful conduct;

e.    An order awarding Plaintiffs and the classes pre-judgment and post-judgment interest as allowed under the law;

f.    An order awarding Plaintiffs and the classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.    An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so properly triable thereby.


Dated August 25, 2017                    Respectfully submitted,

/s/ Peter Gil-Montllor

Peter Gil-Montllor (NY State Bar No. 5300553)
Matthew Prewitt (to seek admission *pro hac vice*)
CUNEO GILBERT & LADUCA LLP
16 Court Street
Suite 1012
Brooklyn, NY 11241
Telephone: (202)789-3960
Facsimile: (202) 789-1813
pgil-montllors@cuneolaw.com
mprewitt@cuneolaw.com

Charles LaDuca (NY State Bar No. 476134)
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com


By:      /s/ Michael McShane

Michael McShane
S. Clinton Woods
Ling Y. Kuang
AUDET & PARTNERS, LLP
711 Van Ness Avenue. Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
cwoods@audetlaw.com
lkuang@audetlaw.com


/s/ Charles E. Schaffer

Charles E. Schaffer
LEVIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Telephone: (877) 882-1011
Facsimile: (215) 592-4663

CSchaffer@lfsblaw.com

Melissa S. Weiner
HALUNEN LAW
80 South 8th Street
IDS Center
Suite 1650
Minneapolis, MN 55402
Telephone: (612) 548-5286
Facsimile: (612) 605-4099
weiner@halunenlaw.com

*Attorneys for Plaintiffs MARTHA COLE and WAYNE HONSBERGER*